GUNDERSON, Respondent, vs. STRUEBING, Appellant.

*April 10—May 2, 1905.*

*False imprisonment: Evidence: Ordinance authorizing arrest without*
*warrant.*

1. In order to constitute unlawful imprisonment where no force or
   violence is actually used, the circumstances attending the ar-
   rest must be such as to warrant a reasonable apprehension that.
   force will be used if there be no submission to the restraint
   under it.
2. In an action for false imprisonment, under evidence stated in the·
   opinion, it is *held* error to submit to the jury only the question
   of damages.
3. The charter of the city of Oshkosh (sec. 4, subch. VI, ch. 59, Laws.
   of 1891) gives no express authority to arrest without a warrant.
   In an action for false imprisonment the court refused to admit
   in evidence an ordinance of that city, authorizing a policeman.
   to arrest without a warrant all persons who should be found in,
   the act of committing a felony or misdemeanor, or who should
   be reasonably suspected of having committed such act.   *Held*,
   that in so far as the ordinance authorized or attempted to au-·
   thorize the arrest without warrant of persons suspected of hav-
   ing committed felonies or misdemeanors, it was invalid, and its·
   exclusion not error.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge.   *Reversed.*

This is an appeal from a judgment against defendant in-
an action for false imprisonment.   The complaint charges.

that defendant maliciously caused the arrest and imprison-
ment of the plaintiff without probable cause and without war-
rant or process and caused him to be taken to the police sta-
tion and searched by a police officer December 8, 1902, at
Oshkosh, Wisconsin. The answer is a general denial, and
sets up, among other things, that defendant was a retail cloth-
ing merchant at Oshkosh, and shortly before the alleged ar-
rest plaintiff and two other persons were in defendant's store
making purchases; that at the time a pair of gloves was
stolen from defendant's store, and plaintiff's conduct created
a suspicion that he had stolen them; that defendant com-
municated the facts to a police officer, leaving the officer to
act upon his own judgment and responsibility; and that de-
fendant in no manner directed, participated in, counseled,
aided, or abetted the alleged arrest or false imprisonment.
The answer further alleges that, if any arrest was made, it
was made pursuant to an ordinance of the city of Oshkosh
authorizing policemen to arrest without warrant any person
reasonably suspected of having committed a misdemeanor.
The action was tried before the court and jury. After the
evidence was in, the court submitted to the jury nothing but
the question of damages, and took from them and decided
as matters of law the following questions: (1) That there
was an arrest and false imprisonment; (2) that it was un-
lawful and without probable cause or justification; (3) that
it was procured and instigated by the defendant; (4) that
the defendant acted without malice; (5) that the defendant
was liable for compensatory damages only. The jury found
for the plaintiff in the sum of $150. Motion for new trial
was made and denied. Due exceptions were filed. Judg-
ment was entered for plaintiff for damages and costs aggre-
gating $198.88, from which defendant appealed to this court.

   *Fred. Beglinger,* counsel, for the appellant.

   For the respondent there was a brief by *J. Mulloy* and
*F. C. Stewart,* and oral argument by *Mr. Mulloy.*

KERWIN, J.   The main questions involved upon this appeal are whether the court erred in taking the case from the jury and directing a verdict for plaintiff upon the material facts.   The evidence upon the trial tended to show that on the day in question the plaintiff, his brother, and a companion, comparative strangers in the city of Oshkosh, entered the store of defendant, where plaintiff purchased a cap and some mittens.   He looked at gloves and mittens and asked for a reduction in price, whereupon the clerk went to the back office and consulted defendant about such reduction. After plaintiff purchased the mittens he and his companions left the store.   Immediately thereafter the clerk who waited upon plaintiff missed a pair of gloves, and another clerk claimed to have seen plaintiff take the gloves from the show case and put them in his pocket.   The conduct of plaintiff and his companions while in the store created suspicion.   The facts and circumstances were stated to defendant by the clerk immediately after plaintiff and his companions left the store, whereupon he followed plaintiff, meeting Henry Frohrib, a police officer, whom he called aside and to whom he stated what his clerks had told him, and pointed out the plaintiff. The officer, Frohrib, testified that when he approached plaintiff he said, "I would like to see you down to the station a minute;" that he did not touch plaintiff or lock arms with him; that he did not lay hands upon him, and plaintiff walked with him to the station.   When half way to the station plaintiff asked him what he wanted of him, and the officer told him when he got to the station he would tell him. After arriving at the station the officer explained to plaintiff and his companions and they consented to be searched.   They remained at the station a few minutes.   There was no force used upon the persons of the plaintiff or his companions. There is also evidence that defendant was not with the officer when he went with the boys to the station; that, after defendant was informed that the gloves had been stolen,

he followed plaintiff and his companions until they got op-
posite Ben Read's store; that he met the officer, Frohrib,
took him around the corner, and informed him of what his
clerks had told him with reference to the taking of the gloves;
that he did not tell the officer either to arrest plaintiff, take
him to the station, or search him; that he only talked with
the officer a few seconds.    There is evidence on the part
of the plaintiff that the officer said, "I want you," locked
arms with him, and walked to the station.    This is de-
nied by the officer.    After defendant informed the officer
he walked back to his store, remained there a few minutes,
and then went to the station to ascertain the result of the
search and to get his gloves, expecting to find them there
after being taken from the man he had pointed out to the offi-
cer, but was informed by the officer that he had found noth-
ing.    Defendant saw plaintiff after he left the police station
and had some talk with him, but could not remember just
what was said.    There is evidence on the part of the plaintiff
and his companions in conflict with the testimony of defend-
ant and the officer.    It also appears that Torsud, one of
plaintiff's companions, has brought a similar action against
defendant.

The evidence is capable of the construction that the officer
may have intended to make no arrest, but to talk the matter
over with plaintiff at the station, and ascertain, if he could,
whether the report concerning the larceny was true.    There
was sufficient evidence to support an inference that the offi-
cer did not intend to arrest, search, or imprison plaintiff
against his will; and, considering the testimony in its most
favorable light for defendant, it is capable of the construc-
tion that there was no array of force exhibited by the officer
such as would warrant, necessarily, the plaintiff in believing
that if he did not obey the invitation to go to the police sta-
tion he would be arrested or restrained of his liberty.    It is
perhaps true that, upon the evidence and all the inferences

Gunderson v. Struebing, 125 Wis. 173.

which might properly be drawn from it, a jury would be jus-
tified in finding that an arrest had been made; but it is also
true that a jury might well have found that the facts and
circumstances were not sufficient to warrant a reasonable ap-
prehension on the part of the plaintiff that he would have
been arrested or restrained of his liberty had he refused to
accompany the officer to the police station or consent to being
searched after his arrival there.    There is no evidence that
the plaintiff knew he was suspected of the commission of any
offense at the time of the alleged arrest, and he might well
have supposed that the officer desired to consult him on some
matter connected with his duties and which did not involve
any action against him.    Assuming that he was innocent,
there was nothing whatever in the situation sufficient to im-
press him with a reasonable apprehension of being put under
arrest or restrained of his liberty. The law is jealous of the
rights and liberties of the citizen, and it is of the highest im-
portance in its administration that he be guarded against any
invasion of his constitutional rights; but on the other hand
the good order of society, the protection of the citizen, and
the suppression of crime make it highly important that pub-
lic officers vested with police powers use reasonable diligence
in the performance of their duties in guarding against the
commission of crime and seeking out the means of prevent-
ing it, as well as aiding in the pursuit and apprehension of
those suspected of violating the law. If the officer, in the
discharge of his duty, in good faith invited plaintiff to the
police station for the purpose of interrogating him and in-
vestigating the charge, with a view of deciding upon future
action, and without any intention at that time of putting
plaintiff under arrest or restraint, no case was made by
plaintiff; and we think the testimony was capable of that
construction, and that the question was one for the jury.    In
order to constitute unlawful imprisonment where no force or
violence is actually used, the circumstances attending the ar-

rest must be such as to warrant a reasonable apprehension that force will be used if there be no submission to the restraint under it. *Greathouse v. Summerfield,* 25 Ill. App. 296. And so it would seem the jury would have been warranted in finding that the police officer was in good faith acting in the discharge of his duties, with a view and purpose only of investigating the circumstances of the case, and with no intention whatever of arresting plaintiff, and that he did not, in fact, threaten any force or compulsion sufficient to warrant plaintiff in apprehending that he was, or would be put, under restraint. From the testimony in the case the jury might well have found that plaintiff voluntarily accompanied the officer to the station and consented to be searched. Under such circumstances there would be no arrest or false imprisonment. True, any prevention of one's movements from place to place, or his free action according to his own pleasure and will, may amount to imprisonment, and this may be accomplished by words and an array of force. But when the evidence is such that reasonable men, unaffected by bias or prejudice, may disagree as to the inferences or conclusions to be drawn from it, the question should be submitted to the jury. The facts proved, the probabilities, and all reasonable inferences in the case at bar were not so strongly against the defendant as to justify the court in directing a verdict. It is only in cases where the proof is so overwhelmingly one way that no reasonable inference can be drawn from it to support defendant's case that the court is justified in directing a verdict for plaintiff. *Maanum v. Madison,* 104 Wis. 272, 80 N. W. 591.

"The rule is well settled that, if there is any credible evidence in the case from which a reasonable inference may be drawn in support of the claim of either party to the action, then the court cannot assume to decide the controversy as a matter of law. Under such circumstances the questions of fact must be submitted to and determined by a jury." *Morgan v. Pleshek,* 120 Wis. 306, 308, 97 N. W. 917.

It is assigned as error that the court refused to admit in evidence an ordinance of the city of Oshkosh authorizing the chief of police and policemen to arrest all persons who shall be found in the act of committing a felony or misdemeanor, or who shall be reasonably suspected of having committed such act. The charter gives no express authority to authorize arrest without warrant. It confers power upon the common council

"to authorize the arrest, fine and imprisonment of vagrants, or persons who, not having visible means to maintain themselves, are without employment, idly loitering, or rambling about or staying in groceries, drinking saloons, houses of ill-fame, houses of bad repute, gambling houses, railroad depots, fire-engine houses, or who shall be found trespassing in the night time upon the private premises of others; or begging or placing themselves in the streets or other thoroughfares, or public places to beg or to receive alms; also keepers, exhibitors or visitors at any gaming tables, gaming house, house of fortune telling, or place of cock fighting, and all persons who go about for the purpose of gaming or who shall have in their possession any article or thing used for obtaining money under false pretenses or who shall disturb any place where public or private schools are held either on week day or Sabbath, or places where religious worship is held." Subd. 61, sec. 4, subch. VI, ch. 59, Laws of 1891.

It is clear that the above provision confers no authority upon the common council to authorize arrest without warrant in cases other than where such arrest would be lawful under existing laws. It is the general rule of the common law that no arrest can be made without a warrant except in certain cases where the ends of justice would be defeated without it. For public reasons, therefore, in some cases, the personal security of the citizen is subjected to the liability of being arrested without a warrant, but the right thus to arrest must be confined to cases of strict public necessity. In *Stittgen v. Rundle*, 99 Wis. 78, 80, 74 N. W. 537, this court said:

"An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer."

The authority conferred upon the common council of the city of Oshkosh to arrest, fine, and imprison clearly means according to existing laws, and the common council therefore could authorize its police officers to arrest without warrant only in cases where, independent of its charter, such arrest might be made. It is elementary that no such extraordinary power as the right to arrest without warrant, contrary to existing laws, could be implied from a general grant to a municipal corporation to authorize arrest, fine, and imprisonment. It is therefore clear that no authority was conferred authorizing arrest without warrant of persons guilty of misdemeanors not committed in the presence of the officer. It is well settled that a municipal ordinance must be reasonable and in harmony with the principles of the common law, and, in so far as the ordinance offered in evidence authorized or attempted to authorize the arrest without warrant of persons suspected of having committed misdemeanors, it was invalid, and therefore properly excluded.

We hold that the court erred in refusing to submit to the jury whether the plaintiff was arrested, and, if so, whether defendant instigated such arrest, and that the court was right in excluding the ordinance.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.