ALLEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 16—March 11, 1924.*

*Intoxicating liquors: State·prohibition act: Construction: Transporting liquor on person: Arrest without·warrant: When justified: Search without warrant.*

1. Though the state prohibition act (ch. 165, Stats. 1923) is in derogation of the common law, the act is to be liberally construed to carry·out its purposes, in view of a provision in the act to that effect. p. 330.
2. Except as changed in the prohibition act itself, the rules of practice and evidence under the common law and statutes apply in prosecutions under the act and they will be strictly construed to preserve the liberty and other constitutional rights of the accused. p. 330.

3. The offenses under the state prohibition act are misdemeanors, not felonies, and belong to that class of crimes that are *mala prohibita,* the acts which constitute the offenses being innocent in the absence of statute.   p. 330.

4. Under sub. (13), sec. 62.09, Stats., making it the duty of a police officer "to arrest with or without process . . . every person . . . violating any law of the state," construed as a whole and in harmony with the constitution and with statutes *in pari materia,* police officers are given the powers of constables to arrest without warrant any person found violating any law of the state; but the statute cannot be construed as giving police officers the right to find a person guilty of an offense by illegal arrest or illegal search.   p. 332.

5. Where police officers did not find that the accused violated the prohibition act until after a search of his person and his arrest, made without a warrant for either, whether the search was first made as a basis of the arrest, or the arrest made first as a basis of a search, in order to ascertain whether he committed an offense, the search and arrest were both illegal and the proceedings void from the beginning.   p. 333.

6. Under certain circumstances a person may lawfully possess and lawfully transport liquor, as this is specially recognized by the prohibition act.   p. 334.

7. Assuming that the admission of the accused to the officers who arrested him without a warrant that he had liquor on his person was evidence which could be used against him in a prosecution under the prohibition act, it was not the kind of evidence contemplated by the statute as a basis for arrest without warrant.   p. 335.

8. Evidence justifying an arrest without warrant is evidence that comes to the officer, before the arrest, through his sense of sight or other natural senses.   p. 335.

9. The state prohibition act, being a revision of the liquor laws of the state, supersedes all other laws on the same subject. p. 335.

10. Under such act, one transporting liquor on his person may not · be arrested without warrant, or be searched except under a warrant issued by a magistrate according to law.   p. 336.

ERROR to review a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge.   *Reversed.*

The defendant below, herein designated as the defendant, was convicted by a jury for having in his possession illegally

manufactured intoxicating liquors and trafficking in the same. He was sentenced to ninety days at hard labor in the county jail. He now claims his conviction was unlawful for the reason that he was unlawfully searched, and liquor thus taken from his person was received in evidence over his objection.

Defendant was walking peacefully along a public street in the city of Fond du Lac when he was accosted by a police officer in uniform accompanied by another officer in plain clothes, and asked if he had any liquor on his person. He replied that he did. Thereupon the officer searched him and found a pint bottle of liquor in his inside coat pocket. He was then taken to the police station by the officers and further searched, when a second bottle was found in his hip pocket. On the trial a motion was made by defendant's attorney to suppress the evidence obtained by such searches and seizure. On this motion evidence of the police officers was taken by the court in the absence of the jury. It appeared that the officers had no warrant for the arrest of the defendant and they had no search warrant. They had been informed that the defendant had gone for liquor and they had intercepted him upon such information. It would seem that the search was made before the arrest, and the arrest was made on the evidence obtained by the search. The court denied the motion to suppress the evidence thus obtained. On the trial the liquor was offered in evidence, to which offer defendant's counsel objected. His objection was overruled and the evidence admitted. His conviction followed. After sentence and judgment a writ of error was issued out of this court to review the proceedings.

For the plaintiff in error there were briefs by *Gooding, Keck & Gooding* of Fond du Lac, and oral argument by *C. P. Keck.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *James Murray,* district attorney of Fond du Lac

county, and oral argument by *Mr. Messerschmidt* and *Mr. Murray*.

CROWNHART, J.    It was June 15, 1215, that the people at Runnymede wrested from King John of England the great charter of English liberties wherein the king gave the pledge of the government that "No freeman shall be taken or imprisoned . . . nor will we pass upon him, nor will we send upon him, unless by the judgment of his peers, or by the law of the land."

That guaranty of personal liberty, under constant struggle between sovereign and subject for hundreds of years, was expanded and confirmed in the English common law until it was said by William Pitt that "The poorest man may in his cottage bid defiance to all the force of the Crown.    It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter,—but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement."    Such was the spirit of English liberties that came to us as a part of our common law.    But that was not enough.    The founders of our government, in writing the constitution, assumed the liberties of the people to be firmly established and did not write them into the constitution.    The people of this country, however, having had experience under the British crown, with writs of assistance, refused to accept the constitution until assured of the adoption of amendments that would enumerate and preserve their liberties under a written constitution.    Accordingly, there was immediately adopted the "Bill of Rights" contained in the first ten amendments to the federal constitution, among which are found the following pledges of security of person and property:

"Article IV.    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"Article V. No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ."

These provisions have their counterparts in the Bill of Rights in the Wisconsin constitution, where it is written:

"Article I. Section 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

"Section 11. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

"Section 22. The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles."

In speaking of these rights and liberties of the citizens, in *Weeks v. U. S.* 232 U. S. 383, 34 Sup. Ct. 341, Mr. Justice DAY said:

"The effect of the Fourth amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal constitution, should find no sanction in

the judgments of the courts which are charged at all times with the support of the constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights. . . . 'If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the constitution.  The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.''

In speaking of the Fourth and Fifth amendments to the federal constitution, Mr. Justice CLARK of the United States supreme court, for the full court, said:

"It would not be possible to add to the emphasis with which the framers of our constitution and this court (in *Boyd v. U. S.* 116 U. S. 616, 6 Sup. Ct. 524, in *Weeks v. U. S.* 232 U. S. 383, 34 Sup. Ct. 341, and in *Silverthorne L. Co. v. U. S.* 251 U. S. 385, 40 Sup. Ct. 182) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the constitution by these two amendments.  The effect of the decisions cited is: that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property;' that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right to trial by jury, to the writ of *habeas corpus*, and to due process of law.  It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." *Gouled v. U. S.* 255 U. S. 298, 41 Sup. Ct. 261.

Thus the purpose of these amendments, the substance of which is found in our state constitution, is made plain and unequivocal.  Under the constitution of our state every argument advanced by the United States supreme court in favor of.a broad and liberal construction of such provisions is applicable and persuasive.  No stealthy encroachment on the liberty and freedom of the citizens of this state, either by legislative enactment or by courts or other officers of the law, is to be permitted or tolerated.  The constitutional rights of our citizens are to be preserved in all their intendments unimpaired.

. A good illustration of the jealousy with which these guaranties of liberty are regarded is found in *Snyder v. U. S.* 285 .Fed. 1.  In that case—

"Defendant, about 2 o'clock in the afternoon of the 5th of 'November, 1921, while standing in one of .the public streets in the city of Wheeling, West Virginia, was approached by a federal prohibition officer, who, observing the inside pocket of his overcoat bulged out and the neck of a bottle protruding therefrom, walked 'up to him, placed one hand on his shoulder, remarked that he 'had beat him to it,' forcibly lifted the bottle halfway out of the pocket with the other, and, finding it to contain a liquid of the appearance of whisky, placed him under arrest, and took him, in spite of his protest and a demand for a warrant, into a near-by store, searched him, finding three other similar bottles, afterwards found to contain whisky, and then took him before a United States commissioner, by whom he was bailed for his appearance at' a subsequent date."

Concerning this arrest the court said:

"That an officer may not make an arrest for a misdemeanor not committed in his presence, without a warrant, has been so frequently decided as not to require a citation of authority.  It is equally fundamental that a citizen may not be arrested on suspicion of having committed a misdemeanor and have his person searched by force, without a warrant of arrest.  If, therefore, the arresting officer in this case had no other justification for the arrest than the mere

suspicion that a bottle, only the neck of which he could see protruding from the pocket of defendant's coat, contained intoxicating liquor, then it would seem to follow without much question that the arrest and search, without first having secured a warrant, were illegal. And that his only justification was his suspicion is admitted by the evidence of the arresting officer himself. If the bottle had been empty or if it had contained any one of a dozen innoxious liquids, the act of the officer would, admittedly, have been an unlawful invasion of the personal liberty of the defendant. That it happened in this instance to contain whisky, we think, neither justifies the assault nor condemns the principle which makes such an act unlawful."

And then the court quotes with approval from *Blacksburg v. Beam,* 104 S. C. 146, 88 S. E. 441, as follows:

". . . Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it must do so in conformity to the laws of the land. There are two reasons for this: one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates."

Also see *Dukes v. U. S.* 275 Fed. 142; *Amos v. U. S.* 255 U. S. 313, 41 Sup. Ct. 266.

It should be borne in mind that offenses under the state prohibition act are misdemeanors and not felonies. They belong to that very numerous class of offenses that are *mala prohibita* and not *mala in se.* They are in law of the same grade as violations of the traffic laws, Sunday laws, health laws, food laws, building code, safety acts, game laws, and very many other police regulations. Without the statute, the acts constituting these offenses would be innocent acts. The prohibition act is in derogation of common law, but it is to be liberally construed to carry out its purposes, for it is so denominated in the act. Except as the rules are changed in the act itself, the rules of practice and evidence under the common law and statutes apply, and

they will be strictly construed to preserve the liberty and other constitutional rights of the accused.

Popular demand for enforcement of the prohibition act adds nothing and detracts nothing from the duty of public officials in construing and applying the law as it is. The legislature may amend the law, but until then public officials must obey the law as they find it.

The constitution of this state provides that the common law shall remain in force until changed by the legislature. Sec. 13, art. XIV, Const.

At common law arrests were not permissible without a warrant except for acts committed in the presence of the officer causing a breach of the peace. In Stittgen v. Rundle, 99 Wis. 78, 80, 74 N. W. 536, this court said:

"An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer."

The legislature of this state has not modified the common law, but has only restated it by statute. Secs. 4833, 4837, and sub. (13), sec. 62.09.

Sec. 4833 provides:

"Any person who shall, in the presence of any magistrate mentioned in this chapter or before any court of record, make an affray, or threaten to kill or beat another or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace and being of good behavior for a term of not exceeding six months, and in case of a refusal may be committed as before directed."

Sec. 4837 provides:

"If any magistrate or officer mentioned in this chapter shall have any knowledge that any assault and battery is about to be committed or that any affray is about to occur

he shall forthwith issue a warrant and proceed as is directed when complaint has been made; and if any such offense is committed, threatened or attempted in his presence he shall immediately arrest the offender or cause it to be done and for this purpose no warrant or process shall be necessary, but the officer may summon to his assistance any sheriff, coroner or constable and all other persons there present, whose duty it shall be to aid the officer in preserving the peace, arresting and securing the offenders and all such as obstruct or prevent the officer or any of his assistants in the performance of their duty, and any person who shall, when summoned to aid in arresting and securing an offender, refuse to give such assistance shall forfeit the sum of five dollars."

Sub. (13), sec. 62.09, provides:

"*Police.* The chief of police shall have command of the police force of the city under the direction of the mayor. It shall be his duty to obey all lawful written orders of the mayor or common council. The chief and each policeman shall possess the powers, enjoy the privileges and be subject to the liabilities conferred and imposed by law upon constables, and be taken as included in all writs and papers addressed to constables; shall arrest with or without process and with reasonable diligence take before the police justice or other proper court every person found in the city in a state of intoxication or engaged in any disturbance of the peace or violating any law of the state or ordinance of such city and he may command all persons present in such case to assist him therein, and if any person, being so commanded, shall refuse or neglect to render such assistance he shall forfeit not exceeding ten dollars. They shall collect the same fees allowed to constables for similar services."

It will be noted that none of these sections change the common-law rule unless it be sub. (13), sec. 62.09, which makes it the duty of a police officer to "arrest with or without process . . . every person . . . violating any law of the state." But this section must be read as a whole, and so read it is clear that police officers are given the powers of constables to arrest without warrant any person found violating any law of the state. *Gunderson v. Struebing,* 125

Wis. 173, 104 N. W. 149.   In the instant case the police officers did not find the defendant violating any law of the state until after his illegal search and illegal arrest, when they discovered evidence leading them to believe he was violating a law of the state.   This statute cannot be construed to give police officers the right to find a person guilty of the offense by illegal arrest or illegal search.   Policemen are not to try the accused.   If they see him in the act of committing an offense they may arrest him without a warrant.   But if the accused is searched without warrant as a basis of arrest, or if arrested without warrant as a basis of search, in order to ascertain that the accused is committing an offense, the proceedings are void from the beginning.

Had the officers made a legal arrest they would have been justified in their search of the defendant.   Or had the officers made a legal search of the defendant they would have been justified in making an arrest upon finding defendant violating the law.   But the officers did neither.   They had no warrant to arrest; they had no warrant to search.   So, assuming that the arrest was made before the search, the arrest was illegal and the search following was illegal; or, assuming the search was made before the arrest, the search was illegal and the arrest based thereon without a warrant was illegal.

The policemen were attempting to enforce a state law, not a city ordinance, and it is not to be presumed that they had any greater authority than sheriffs, or the specially appointed prohibition officers in enforcing the prohibition act.   This section of the statutes (sub. (13), sec. 62.09) must be construed in harmony with the constitution and statutes *in pari materia*.

Defendant was peacefully going his way.   He was officiously restrained—illegally restrained.   He was searched— illegally searched.   The test is not that the officers found liquor upon the defendant.   Suppose they had not found it. They would have been guilty under the law of illegal

search—of violation of the defendant's sacred right under the constitution to walk the street unmolested. That the officers found liquor could not change the original wrong into a right. That wrong was not blotted out by what they found. The test is the right of an innocent pedestrian against unlawful invasion of his person. And the innocent cannot be protected if officers are permitted to search the person of every one who has been accused by hearsay or rumor. If these officers might waylay a pedestrian without warrant and search his person, opportunity would be open wide for the night-prowler and robber to hold up their victims under pretense of official authority, search their persons, and take their valuables without resistance. The answer is that it cannot be done. It is well recognized by the authorities that a person unlawfully restrained may resist, but we should not come to such a pass. A citizen should respect officers of the law, especially when clothed in the habiliments of authority. This respect for authority can only be secured and maintained by such officers themselves respecting the law they are sworn to uphold.

As was said by the supreme court of Michigan:

"Making, as we are disposed to make, all proper allowance for zeal of police officers in dealing with persons who are supposed to be bad members of society, it is the duty of all courts to prevent good or bad citizens from being unlawfully molested. Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert." *Matter of Way,* 41 Mich. 299, 1 N. W. 1041.

It is contended that this case is to be distinguished from the cases above cited by reason of the fact that the defendant admitted that he was in the act of violating the law. The evidence does not disclose such admission. Defendant admitted he had liquor on his person, whether lawfully or unlawfully did not appear. It may have been lawfully there in so far as the admission disclosed. Under certain circum-

stances a person may lawfully possess and lawfully transport liquor. That is specially recognized by the prohibition act. *Chapleau v. State, post,* p. 404, 197 N. W. 176. But assuming the admission was evidence that might be used in a prosecution against the defendant, it was not the nature or kind of evidence contemplated by the statute as a basis of arrest without a warrant. The statute clearly contemplates that evidence justifying arrest without warrant is evidence that comes to the officer through his sense of sight or other natural senses of a breach of the peace, before the arrest and search. He may not arrest for a misdemeanor on hearsay or suspicion. Nowhere does it appear that the defendant consented to the search or arrest.

Ch. 441, Laws 1921, popularly known as the Severson Act or the Prohibition Act, is a complete revision of the liquor laws of Wisconsin, and supersedes all other laws on the same subject. The search, seizure, arrest, and conviction in the instant case are founded upon this act. By reference to this act we are confirmed in our conclusions hereinbefore given.

Sub. (2) (f) and (2) (g) of sec. 1543, Stats., provide that it shall be the duty of district attorneys and peace officers to co-operate with the prohibition commissioner in the enforcement of the act. Any district attorney or peace officer who shall know or be credibly informed that any offense has been committed against it shall make complaint to a magistrate. No provision is made for arrest without a warrant.

Sub. (23) of sec. 1543 provides for an arrest, evidently without a warrant, of any one unlawfully transporting liquor in wagons or other vehicles. No such provision is made as to transporting liquor on the person.

Sub. (28) of sec. 1543 makes possession of liquor elsewhere than in the home *prima facie* evidence of unlawful possession; and finally—

Sub. (6) of sec. 4840 provides for a search warrant to

issue upon a sworn complaint before a magistrate, that liquor is concealed in a particular place. The magistrate must be satisfied that there is reasonable cause to believe that the facts justifying the issuance of the warrant exist.

Nothing in this act, which is a complete scheme of enforcement of prohibition, justifies any assumption that a person may be arrested for transporting liquor on his person without a warrant or that a person may be searched otherwise than as provided by the statute—that is, under authority of a search warrant issued by a magistrate upon complaint under oath satisfying him that there is probable cause.

This is a simple case. It is ruled by *Jokosh v. State,* 181 Wis. 160, 193 N. W. 976, where the present Chief Justice, in a very lucid opinion, expressed the fundamental principles involved, and *Hoyer v. State,* 180 Wis. 407, 193 N. W. 89, where the authorities are fully collated by Mr. Justice Eschweiler. This opinion it is hoped may add somewhat to an understanding of the origin and purpose of individual liberty under the law, which should not be overlooked or forgotten.

*By the Court.*—The judgment and sentence of the circuit court are reversed, and the cause is remanded for a new trial.

Jones, J., dissents.