RADLOFF and another, Respondents, v. NATIONAL FOOD
STORES, INC., Appellant.*

*April 30—June 4, 1963.*

* Motion for rehearing denied, without costs, on October 1, 1963.

For the appellant there was a brief by *James C. Schalow* and *Daniel L. Costello,* both of Milwaukee, and oral argument by *Mr. Schalow.*

For the respondents there was a brief and oral argument by *Jack J. Gimbel* of Milwaukee.

WILKIE, J. There are three separate issues to be resolved on this appeal. They are:

1. What duty does a storekeeper owe to a customer to protect that customer from injuries caused to him by the intentional acts of an escaping shoplifter?

2. Did the trial court err in not granting a nonsuit?

3. Did the trial court err in not granting a directed verdict?

First: *What duty does a storekeeper owe to a customer to protect that customer from injuries caused to him by the intentional acts of an escaping shoplifter?* Before considering the nature of a storekeeper's duty to protect customers

from injuries caused by the intentional acts of an escaping shoplifter, it is first necessary to emphasize the legal rule governing the authority of storekeepers in dealing with shop-lifters detected in the act of shoplifting on their premises.

In *Stittgen v. Rundle* (1898), 99 Wis. 78, 80, 74 N. W. 536, this court established the principle that, "An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer." This rule was reaffirmed in *Gunderson v. Struebing* (1905), 125 Wis. 173, 104 N. W. 149.

Thus, when Young spotted the shoplifter putting the cigarettes under his coat, it would have been unlawful, at that time, for him to make an arrest. This is especially true when we consider the fact that the alleged shoplifter could well have paid for the items at the time that he went to the check-out counter.

The defendant's employees were not negligent *per se* in stopping the shoplifter to recover the goods he had stolen, for certainly these employees had the right to recover their employer's goods. But they had no right to arrest the shoplifter, as the alleged crime was a misdemeanor and the employees of the National Food store did not have a warrant to arrest the shoplifter. Furthermore, it is quite obvious that under existing and well-established legal rules the supermarket employees had to be extremely careful in apprehending a customer suspected of shoplifting because if subsequent events showed that the person suspected had not in fact been shoplifting, then a suit for false imprisonment would be inevitable. For these reasons, Erickson and Young asked the shoplifter to return to the store voluntarily, and the testimony established that the shoplifter consented to return without compulsion.

The respondent contends that the instant case is governed by *Weihert v. Piccione* (1956), 273 Wis. 448, 78 N. W. (2d) 757, which is cited by the trial court.

The appellants assert that the case is controlled by *Knight v. Powers Dry Goods Co.* (1948), 225 Minn. 280, 30 N. W. (2d) 536.

In the *Weihert Case, supra,* the defendant Piccione was the proprietor of a small restaurant in the city of Janesville. The plaintiff Eleanor Weihert, her husband, and one Donald Tischer, went to the defendant's restaurant late one evening. While at the restaurant a fight broke out between Mr. Tischer and one John Powers. After Powers had succeeded in knocking Tischer out, he purportedly twisted Mrs. Weihert's arm and thereby injured her. Piccione was in the back of the restaurant cooking, and had no knowledge that there was a fight or that one was about to break out. The whole incident took place in a very short period of time, and the evidence established that although Piccione knew Powers, he did not have knowledge that Powers was the type of man to act as he did. The court concluded that a nonsuit was properly granted and relied upon the following statement (p. 455) which was also used by the trial court here as the basis for its decision in the case at bar, namely:

"While it is the general rule that a restaurateur is not an insurer of a guest or patron against personal injuries inflicted by other persons on the premises, who are in no manner connected with the business, Anno. 106 A. L. R. 1003 *et seq.,* nevertheless the proprietor of a place of business who holds it out to the public for entry for his business purposes (including a restaurant) is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, *if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to*

*be done, and could have protected the members of the public by controlling the conduct of the third persons,* or by giving a warning adequate to enable them to avoid harm." (Emphasis added.) [1]

In the *Knight Case, supra,* a book thief (Ingall) was spotted browsing in a bookstore in Minneapolis. The proprietor of that store recognized the thief and called other bookstores to warn them that he was in the area. He later turned up at the defendant's store and was quickly spotted by two women floor detectives while he was in the process of stealing books. He then went outside the store and was confronted by one of the detectives who asked him, " 'Pardon me, sir, but don't you think you had better pay for those books?' " He answered, " 'I guess I will' in a very gentle, soft voice." (p. 282.) He then proceeded back to the manager's office with the two ladies escorting him. As they approached the elevator he suddenly turned around and tried to escape. The sixty-seven-year-old plaintiff, Mrs. Knight, tried to stop him and was knocked down and injured.

The trial court instructed the jury as follows (p. 284):

" 'The defendant in this case was bound to use reasonable care to protect plaintiff as its customer from injury at the

---

[1] Restatement, 2 Torts, p. 953, sec. 348, provides as follows: "348. *Public Utility or Possessor of Business Premises; Acts of Third Persons.* A public utility or other possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals *if the possessor by the exercise of reasonable care could have* (a) *discovered that such acts were being done or were about to be done,* and (b) *protected the members* of the public by (i) controlling the conduct of the third persons, or (ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from a public utility." (Emphasis added.)

hands of vicious or lawless persons who it might bring in to its store.' "

The jury returned a verdict for the plaintiff, but on appeal this order was reversed and judgment was ordered for the defendant on his motion for a judgment notwithstanding the verdict.

The court observed (p. 284) :

"Until Ingall started to run, there is no evidence that defendant knew or should have known that he was vicious.

. . .

"If defendant was negligent, that negligence must have taken place before Ingall started to run."

And (p. 286) :

"It is evident from the above [testimony] that defendant's employes did not know they were dealing with a vicious or violent person, and there is nothing in the record to indicate that they should have so known. . . . Knowledge of the fact that Ingall was a shoplifter, a type of sneak thief, was not knowledge that he was vicious, violent or dangerous as well."

In ruling that the lower court should have directed a verdict for the defendant, the Minnesota supreme court concluded (p. 286) :

"In Christianson v. C. St. P. M. & O. Ry. Co., 67 Minn. 94, 97, 69 N. W. 640, 641, Mr. Justice Mitchell states the rule: '. . . If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; . . . Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen.'

"In Seward v. Minneapolis St. Ry. Co., 222 Minn. 454, 25 N. W. 2d 221, adherence to this rule was stated. In

view of all the circumstances disclosed by the evidence, it cannot be said that defendant's employes had any reasonable ground to anticipate that the act of taking Ingall over to the elevator would or might result in any injury to anybody. Consequently their act would not be negligent."

Discussing the responsibility of shopkeepers where persons are injured by the unexpected conduct of third persons in a store, Anno. 20 A. L. R. (2d) 40, sec. 15, citing the *Knight Case, supra,* states:

"Unexpected conduct of other customers. It has been stated as a general rule that when an injury occurring on the proprietor's premises is the result of the negligence of a customer or customers, no liability attaches to the proprietor unless the circumstances are such that liability can be predicated on the theory of the existence of a *dangerous condition known to or foreseeable by him* which he failed to take reasonable precautions to alleviate." (Emphasis added.)

The crucial factors to be considered in determining whether a party is guilty of negligence has been stated recently by this court in *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 117 N. W. (2d) 597, as follows (p. 43):

"Harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances. *Mondl v. F. W. Woolworth Co., supra; Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372; *Barnes v. Murray* (1943), 243 Wis. 297, 10 N. W. (2d) 123. To constitute negligence, not only must the act involve a risk which the actor realizes or should realize but the risk must be unreasonable. The test of unreasonableness is well stated in Restatement, 2 Torts, p. 785, sec. 291, as follows:

" '(1) Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.' "

In both *Weihert* and *Knight,* the appellate court ruled that as a matter of law there was no negligence on the part of the entrepreneur. In both cases, the court was convinced that there was no knowledge of the acts of misconduct on the part of the third person so as to give rise to a duty on the part of the restaurant owner in *Weihert* or the storekeeper in *Knight* to act to protect the customers.

We do not consider that the legal test of duty and negligence on the part of the storekeeper is different in *Weihert* from the rule in *Knight.* In either case, to establish negligence on the part of the proprietor it is necessary to show that the proprietor or his employees knew or by the exercise of reasonable care, could have discovered that such acts were being done or were about to be done by the third person so as to threaten the bodily security of other patrons on the premises.

The entire cause here revolves around a determination on the evidence before the court, whether there was a jury question (1) as to whether the duty existed and (2) whether or not, if the duty existed, the storekeeper performed his duty in the exercise of reasonable care. This leads to a consideration of the other two issues, namely, whether the court erred either in failing to grant a nonsuit at the end of the plaintiffs' case, or in failing to grant a directed verdict to the defendant after all of the evidence was in.

Second: *Did the trial court err in not granting a nonsuit?* In determining whether or not the trial court should have granted a nonsuit it is necessary to review the evidence most favorable to the plaintiffs. *Weihert v. Piccione, supra.*[2]

---

[2] "A motion for a nonsuit is equivalent to a demurrer to the evidence. In passing upon such motion, it is incumbent upon the court to view the evidence in a light most favorable to the plaintiff, and the court must give the plaintiff the benefit of the most favorable inferences that can reasonably be deduced therefrom." (p. 450.)

The trial court, in denying the defendant's motion for nonsuit, stated:

"I believe that if a store employee undertakes to chase a two-hundred-fifty pound man through a store which has fifty customers in the store, engaging in such a chase can reasonably foresee that injury may befall one of the customers which is precisely what occurred in this case. . . . I have been in a number of these stores myself and I have never seen any store employees chase a two-hundred-fifty pound man through a crowded store and any employee who undertakes such an endeavor certainly can foresee that harm may befall one or another of the customers. Therefore the motion for nonsuit is denied and we'll await the plaintiffs' physician."

At the time the plaintiffs rested, the only witnesses present at the scene of the accident and called to testify for the plaintiffs were the plaintiffs themselves. Their testimony was essentially that Mrs. Radloff was injured when she was knocked down by someone running from the store and that someone shouted, prior to that, "Stop, you thief," and started to chase the man out the store. But at this point, there had been no testimony showing knowledge on the part of the storekeeper or his employees that the shoplifter would take such action as he did and thus harm the customers. Thus, there was no *prima facie* case, and the trial court should have granted a nonsuit when the plaintiffs rested. But, the effect of such a nonsuit is not to have a determination of the merits and the plaintiffs would then have been free to reassert their claim and retry it. See *Klapinski v. Polewski* (1963), 19 Wis. (2d) 124, 119 N. W. (2d) 424, at page 128. The defendant here has raised the question of error not only with respect to the trial court's failure to grant the motion for nonsuit, but also the failure of the trial court to grant its motion for directed verdict. Such a motion is directed at a determination of the merits and if granted results in dismissal of the complaint with prejudice.

Third: *Did the trial court err in not granting a directed verdict?* *Thoni v. Bancroft Dairy Co.* (1949), 255 Wis. 577, 39 N. W. (2d) 690, lays down the general rule regarding directed verdicts. The court cited with approval a rule from *Smith v. Pabst* (1940), 233 Wis. 489, 491, 288 N. W. 780, where it was stated:

" 'A verdict may properly be directed only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' " Citing *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

We have also held in *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457:

" 'In determining whether or not the trial court was in error in directing the verdict this court must take that view of the evidence which is most favorable to the party against whom the verdict is directed.' *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161."

We must hold as a matter of law that on the evidence in this case a directed verdict should have been granted to the defendant, since the evidence, even considered in the light most favorable to the plaintiffs, did not give rise to a jury determination of whether or not the storekeeper or his employees had discovered or by the exercise of reasonable care could have discovered that the shoplifter was doing acts or was about to do acts which would threaten bodily harm to other customers.

The plaintiffs and the trial court contend that the jury could find the defendant negligent simply because of the manner in which the employees elected to escort the alleged shoplifter to the rear of the store, one employee in front and the other behind. They were walking down the aisle in a column. The trial court felt that this in and of itself would

justify the jury's finding that the defendant was negligent. Along with this, the trial court also opined that the defendant's employees should have had more aid in escorting the man to the rear of the store since neither Erickson nor Young were quite as burly as the alleged shoplifter. But is it not difficult to hold that the defendant was negligent because of the manner in which its employees marched an alleged shoplifter to the rear of the store when they had no reason to believe that he was about to act as he did? Furthermore, it would seem quite proper to have someone in front of the shoplifter in case he tried to escape to the front. As for the number of people, two seems quite sufficient in the absence of knowledge that the shoplifter is vicious. The trial court also felt that Erickson was negligent in bending down to pick up the cigarettes when they fell from the shoplifter's jacket. Erickson picked up the cigarettes (the evidence) which would be needed in case of an eventual arrest of the shoplifter.

None of this evidence establishes that the proprietor knew or by the exercise of reasonable care could have discovered that the shoplifter was going to attempt to break loose and to rush out of the store, bumping into customers that might be in the way.

Plaintiffs' contention that in effect the storekeeper and his employees in the exercise of reasonable care could have discovered that these acts threatening bodily security of the other customers were about to be done by the shoplifter, is based on three facts in the record: (1) That he was a Negro, rugged looking, around five feet, 11 inches, and weighed 190–200 pounds; (2) that the shoplifter, when initially returning to the store, tried to keep a counter between Young and Erickson; and (3) that initially, when the shoplifter was apprehended, he stated to Young and Erickson, after he was requested to return to the store, "You people are going to gang up on me."

In our opinion, none of this evidence, taken either individually or cumulatively, was sufficient to raise a jury question. We, therefore, conclude that as a matter of law the defendant did not know and by the exercise of reasonable care could not have discovered that the violent acts done by the shoplifter were being done or were about to be done so as to give rise to a duty on the part of the defendant to protect its customers from the shoplifter's acts.

*By the Court.*—Judgment reversed, and cause remanded to circuit court for the purpose of dismissing the complaint.

DIETERICH and GORDON, JJ. (*dissenting*). We respectfully dissent. It appears to us that there were a number of circumstances in the instant case from which a jury could reasonably have concluded that there was negligence on the part of the defendant.

Ordinarily, one is not liable for the intentional acts of third persons. However, this should not relieve a storekeeper from the duty of using reasonable care to protect his customers from injury at the hands of those whom he might reasonably anticipate will be dangerous. This would be especially true when the storekeeper himself has provoked the dangerous course of action.

In the instant case, the thief was a large man who had previously informed the storekeeper of his fear that "he would be ganged up on." The defendant's employees marched him through the store in a manner which suggested that they were aware of his dangerous propensities. Under these circumstances it was appropriate, in our opinion, that the trier of fact evaluate whether there was a breach of duty on the part of the defendant.

We contrast this with *Knight v. Powers Dry Goods Co.* (1948), 225 Minn. 280, 285, 30 N. W. (2d) 536, 539, where the suspected thief was described as follows: ". . . well-bred and looked like an educated man . . . he acted

the part of a perfect gentleman." When the suspected thief was asked to pay for the goods, "he said in a soft, gentle voice, 'I guess I will,' walked calmly back into the store, and proceeded quietly until he reached the elevator."

We can appreciate that such demeanor would not give rise to any concern on the part of the store manager. However, in the case at bar the culprit's actions were vastly different; we are not prepared to rule as a matter of law that the defendant could not reasonably have foreseen danger to its customers. See Landowner Owes Invitee No Duty To Provide Police Protection Against Criminal Attack, 63 Columbia Law Review (1963), 766.

In our opinion, the jury's findings should be allowed to stand, as the trial court determined.

The following opinion was filed October 10, 1963:

PER CURIAM (*on motion for rehearing*). Plaintiffs call attention to our statement that the store employees had no right to arrest the shoplifter because the alleged crime was a misdemeanor, and to the implication therein that a person not an officer is not permitted to arrest without warrant for any misdemeanor. They point out correctly that under the common law a person not an officer was permitted to arrest without warrant for a misdemeanor constituting a breach of the peace and committed in his presence.[1]

We find no Wisconsin decision dealing with this principle.[2] It appears that it is still in force in this state.

---

[1] 5 Am. Jur. (2d), Arrest, p. 727, sec. 35; 6 C. J. S., Arrest, p. 607, sec. 8c; 1959 Wisconsin Law Review, 489, 518.

[2] The two cases cited in our original opinion dealt directly with cases where an officer arrested without warrant for a misdemeanor not committed in his presence. *Stittgen v. Rundle* (1898), 99 Wis. 78, 74 N. W. 536; *Gunderson v. Struebing* (1905), 125 Wis. 173, 104 N. W. 149. The present rule with respect to arrest by an officer without warrant for a misdemeanor is found in sec. 954.03 (1), Stats.

The authorities differ with regard to the types of activity which constitute a breach of the peace under this rule.[3] An affray or assault involves violence and is quite obviously a breach of the peace. But in Tennessee it has been held that unlawful sale of liquor is a breach of the peace.[4]

Cases dealing with arrest by a person not an officer for shoplifting have reached opposite results, but have not discussed whether or not shoplifting constitutes a breach of the peace under the common-law rule.[5]

We conclude that as a matter of policy the authority of a person not an officer to arrest for a misdemeanor committed in his presence should be limited to instances where the public security requires it, that is to acts which involve, threaten, or incite violence. We do not consider the misdemeanor, theft, a breach of the peace in this sense.

We note that both houses of the present legislature passed a bill authorizing a merchant or his employee having probable cause for believing that his goods have been unlawfully taken to detain the suspect for a reasonable length of time, not to exceed thirty minutes. Governor Reynolds vetoed the bill because of the possible intrusion on the rights of individuals who might, in fact, be innocent.[6]

Motion for rehearing denied, without costs.

---

[3] 5 Am. Jur. (2d), Arrest, p. 719, sec. 29.

[4] *State ex rel. Thompson v. Reichman* (1916), 135 Tenn. 653, 188 S. W. 225.

[5] Shoplifting being a misdemeanor, arrest was not authorized. *Fitscher v. Rollman & Sons Co.* (1929), 31 Ohio App. 340, 167 N. E. 469; *Szymanski v. Great A. & P. Tea Co.* (1947), 79 Ohio App. 407, 35 Ohio Op. 177, 74 N. E. (2d) 205. See also *Girlinghouse v. Zwahlen* (1926), 3 La. App. 720, involving theft of gravel from a pit. Arrest for shoplifting was authorized. *Ira v. Columbia Food Co.* (1961), 226 Or. 566, 360 Pac. (2d) 622.

[6] Message returning Bill No. 339, S., August 16, 1963, Senate Journal, p. 1806.