*243 SHIRLEY S. ABRAHAMSON, J.
¶ 32. (dissenting). The Sixth Amendment to the United States Constitution enumerates an accused's rights "in all criminal prosecutions." Glenn T. Zamzow, convicted of drunk driving, asserts that he was denied his Sixth Amendment enumerated right "to be confronted with the witnesses against him" during a hearing on his motion to suppress evidence. The majority opinion declares, without equivocation, that no such right exists.
¶ 33. The United States Supreme Court has not squarely addressed the issue presented in the instant case. Thus, to decide the instant case the majority opinion must predict, on the basis of case law tackling other questions, what the United States Supreme Court will do when it has the opportunity to decide the issue presented in the instant case.
¶ 34. The Sixth Amendment to the United States Constitution states:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. (Emphasis added.)
¶ 35. The instant case involves a Fourth Amendment suppression hearing,[1] not a preliminary examination. The two are very different. Cases cited by the *244 majority opinion relating to preliminary examinations are not relevant to the instant case.[2]
¶ 36. To put the instant case in context, the Sixth Amendment Confrontation Clause is implicated when the declarant's statement is testimonial. Crawford v. Washington, 541 U.S. 36 (2004). Majority op., ¶ 27 n.14. The circuit court found that some of the de-clarant's (here Officer Birkholz's) statements were testimonial and some were not. Silently assuming that all the evidence at issue is testimonial, the court of appeals and the majority opinion do not determine whether the evidence is testimonial under Crawford.[3] *245 Apparently, it is easier for the majority opinion to answer the constitutional confrontation question regarding suppression hearings than to answer whether the evidence of Zamzow's driving and law enforcement's stop is testimonial. I take on the same question the majority opinion does.
¶ 37. I conclude that the Sixth Amendment confrontation right applies at suppression hearings. My analysis will proceed as follows:
I. The text and history of the Sixth Amendment enumerating the confrontation right "in all criminal prosecutions" informs the interpretation of the confrontation right at a suppression hearing. Cross-examination is the core of the confrontation ' right.
II. The phrase "in all criminal prosecutions" in the Sixth Amendment is not limited to what occurs at trial. In any event, at the time of the adoption of the Sixth Amendment, suppression hearings were generally conducted at trial.
III. The United States Supreme Court's interpretation of the textual phrase "in all criminal prosecutions" in applying an enumerated Sixth Amendment right other than the confrontation right informs the interpretation of the Sixth Amendment confrontation right. The Sixth Amendment Counsel, *246 Compulsory Process, and Confrontation Clauses are structurally identical.
A. Enumerated Sixth Amendment rights attach to non-trial critical stages in a criminal prosecution.
B. The purpose and function of a proceeding in a criminal prosecution determines the application of an enumerated Sixth Amendment right.
I
¶ 38. I start where the majority opinion starts— with the text of the Sixth Amendment enumerating rights "in all criminal prosecutions." The text informs the interpretation of the confrontation right. Majority op., ¶ 13.
¶ 39. The constitutional text alone might not resolve the instant case, but it helps a great deal.[4] The very words "in all criminal prosecutions" signify that the confrontation right is guaranteed in proceedings before, during, and after the trial.[5] Unfortunately, the majority opinion does not seriously engage with the text of the Sixth Amendment.
¶ 40. The majority opinion in the instant case, without careful attention to Justice Scalia's historical analyses of confrontation in Crawford, looks to history. It limits its historical research and its originalist view of "in all criminal prosecutions" and the Confrontation Clause to some old dictionaries, Blackstone's Commen *247 taries, and one 1895 United States Supreme Court case.[6] See majority op., |¶ 14-16. As the majority opinion correctly acknowledges, its historical analysis is not illuminating.
¶ 41. Justice Scalia's and Chief Justice Rehnquist's historical analyses of the Confrontation Clause in Crawford are helpful in the instant case. To understand the meaning of the Sixth Amendment Confrontation Clause, Justice Scalia turned to the historical background of the Clause, devoting a significant part of his opinion to this endeavor. The Justice examined details of English common law, colonial American practice, and American cases. He used diverse sources such as English and American cases; histories of English law; histories of the Sixth Amendment; evidence, criminal law, and constitutional law texts; law review articles; and nineteenth-century treatises. Chief Justice Rehnquist's concurrence in the Crawford judgment proffered its own extensive view of historical evidence on the meaning of the Confrontation Clause.[7]
*248 ¶ 42. These analyses are edifying for purposes of this writing. The history demonstrates that the right of confrontation was very important in Roman, English, and American legal history. From this history, the following precepts can be drawn from Crawford about the confrontation right:
• The English common-law tradition is one of live testimony in court subject to adversarial testing.[8]
• "Nothing can be more essential than the cross examining [of] witnesses, and generally before the triers of the facts in question .. . ."[9]
• Many early American cases demonstrate that prosecutions are carried on to conviction by witnesses confronted by the accused and subjected to the accused's personal examination.[10]
• "[T]he common law in 1791 [when the Sixth Amendment was adopted] conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations."[11]
• The historical sources do not say "that a prior opportunity to cross-examine was merely a suffi *249 cient, rather than a necessary, condition for admissibility of testimonial statements. They suggest that this requirement was dispositive."[12]
• The Confrontation Clause reflects the judgment that reliability of evidence is tested "in the crucible of cross-examination."[13]
¶ 43. In sum, the text and historical analyses of the Confrontation Clause lead to the conclusion that the confrontation right is of great significance in Anglo-American jurisprudence and that the significance of the confrontation right lies in the accused's right to cross-examine a witness.
III
¶ 44. The majority opinion rests its conclusion on its certitude that the accused's right of confrontation is limited to the trial. Majority op., ¶¶ 17-21. This purported certitude has no basis in the text of the Sixth Amendment. The text of the Sixth Amendment does not use the word "trial" in stating the accused's confrontation right. In comparison, the accused's Sixth Amendment right to "enjoy the right to a speedy and public trial" explicitly refers to "speedy and public" as a trial right.
*250 ¶ 45. Indeed, the United States Supreme Court has never explicitly held that the Confrontation Clause is an accused's right at trial only.[14]
¶ 46. True, the Court has referred to confrontation as a trial right or a right at trial in its discussion of the Sixth Amendment. But these references have been in the context of cases involving trials.[15] It makes good sense to confine an opinion's discussion to the facts presented—which, in each of the Court's cases referenced by the majority opinion, was a trial. It does not make good sense to extrapolate from these deci *251 sions that the confrontation right is exclusively a right at trial.[16]
¶ 47. A suppression hearing affects the trial and the ultimate question of a defendant's guilt or innocence. If evidence is not suppressed at the suppression hearing, it can be introduced at trial. An issue not discussed by the majority opinion but of importance is the defendant's ability to raise the suppression issue again at trial.[17] If the right of confrontation is not available to the defendant at the suppression hearing, but is available at trial, will the defendant have the right to relitigate the suppression ruling at trial when the constitutional guarantee of confrontation is in effect? If so, what is the purpose of the suppression hearing? If the defendant pleads guilty, does he or she waive the right to raise the confrontation issue on appeal? If so, is the Wisconsin statute allowing a defendant to appeal the denial of a motion to suppress effective? See majority op., ¶[ 26 n.13; see also Curry v. Texas, 228 S.W.3d 292, 298 (Tex. Ct. App. 2007).
¶ 48. Nevertheless, the majority opinion joins courts in other jurisdictions cursorily relying on these references to "at trial" in United States Supreme Court *252 cases to eliminate the confrontation right at a suppression hearing.[18] See, e.g., majority op., ¶ 21 (collecting cases).
¶ 49. Not only is this conclusion devoid of substantial analysis and support in the cases cited, it is also devoid of historical support.[19] Historically, the suppression of unconstitutionally obtained evidence occurred during the trial.[20] "Indeed, the modern suppression hearing, unknown at common law, is a type of objection to evidence such as took place at common law... in open court. . . ." Gannett Co., Inc. v. De-Pasquale, 443 U.S. 368, 437 (1979) (Blackmun, J., concurring in part and dissenting in part).[21] See also I Joseph Chitty, A Practical Treatise on the Criminal *253 Law 571 (5th ed. 1847) ("The practice ... at present, is for the prosecutor's counsel, on his examination of his own evidence in chief, to inquire of the witnesses all the facts, so as to satisfy the jury that the confession was voluntarily made, and duly taken.").
¶ 50. As the years passed, however, courts began hearing suppression motions before trial instead of at trial. Moving the suppression hearing up in time in a criminal prosecution to precede the trial offered greater judicial convenience and efficiency, and it prevented delay while a jury was sitting.[22] Indeed, federal and Wisconsin rules of criminal procedure now generally require that defendants bring a motion to suppress evidence before trial.[23]
*254 ¶ 51. That a suppression hearing has changed temporal location does not detract from its ultimate goal of excluding illegally obtained evidence at trial and should not influence the application of the accused's confrontation right. Interpreting the accused's constitutional confrontation right on the basis of when it is asserted is contrary to the general rule that form is not placed over substance and is contrary to tenets of constitutional law. "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Gouled v. United States, 255 U.S. 298, 313 (1921); abrogated on other grounds by Warden, Md. Penitentiary v. Hayden, 387 U.S. 294 (1967).
¶ 52. Justice Blackmun got it right. He concluded that "for purposes of applying the public-trial provision of the Sixth Amendment" to a suppression hearing, the temporal factor does not control the analysis. Gannett Co., Inc. v. DePasquale, 443 U.S. at 436-37 (Blackmun, J., concurring in part and dissenting in part).
f 53. In sum, the broad text of the Sixth Amendment in the phrase "in all criminal prosecutions" and the fact that suppression hearings were conducted at trial at the time of the adoption of the Sixth Amendment lead to the conclusion that the accused's Sixth Amendment confrontation right may be asserted at the suppression hearing.
*255 III
¶ 54. I next examine the United States Supreme Court's interpretations of the Sixth Amendment text "in all criminal prosecutions" in applying an enumerated Sixth Amendment right other than the confrontation right. These interpretations inform the interpretation of the Sixth Amendment confrontation right because the Sixth Amendment Counsel, Compulsory Process, and Confrontation Clauses are structurally identical.
A
¶ 55. In its cases interpreting and applying the enumerated Sixth Amendment right to counsel, the Court has interpreted the Sixth Amendment text "in all criminal prosecutions" to mean at "critical stages" of the criminal prosecution. Coleman v. Alabama, 399 U.S. 1, 7 (1970).[24]
¶ 56. A critical stage is any stage in a criminal prosecution, "formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial... as affected by his right to meaningfully cross-examine the witnesses against him. .. ." United States v. Wade, 388 U.S. 218, 226-27 *256 (1967) (emphasis added) (relating to counsel at post indictment line-up).[25] In applying the right to counsel and determining the critical stage, a court scrutinizes the pretrial proceeding to determine whether counsel is "necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." Coleman, 399 U.S. at 7. The efficacy of an accused's right to counsel is diminished without an accused's confrontation right. Examining witnesses is an area of counsel's expertise.
¶ 57. The Court's focus on giving a defendant the right to counsel at a pretrial proceeding to ensure the defendant's constitutional right to a fair trial and cross-examination implies that a suppression hearing (inherently tied to fair trial and cross-examination) is a critical stage in criminal prosecutions.[26]
¶ 58. The Wisconsin Supreme Court has long recognized that the confrontation right "is an essential and fundamental requirement for a fair trial." State v. Bauer, 109 Wis. 2d 204, 208, 325 N.W.2d 857 (1982) (citation omitted).
*257 ¶ 59. Courts in several jurisdictions recognize the applicability of the Sixth Amendment confrontation right at suppression hearings on the ground that the suppression hearing is a critical stage in a criminal prosecution that requires cross-examination to ensure a fair trial.[27] The Seventh Circuit Court of Appeals has *258 declared that "a pretrial suppression hearing is a critical stage." United States v. Johnson, 859 F.2d 1289, 1294 (7th Cir. 1988).[28]
• State v. Ehtesham, 309 S.E.2d 82 (W. Va. 1983) (suppression hearing should be "a meaningful hearing, at which both the state and the defendant should be afforded the opportunity to produce evidence and to examine and cross-examine witnesses"; defendant's right denied where judge refused defense opportunity to cross examine officer who obtained search warrant).
¶ 60. Judge Harry Edwards wrote that the suppression hearing is a critical stage of the prosecution because it "affects substantial rights of an accused person; the outcome of the hearing—the suppression vel non of evidence—may often determine the eventual outcome of conviction or acquittal." United States v. Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981). The Green court declared that because of the historical and practical importance of the right of cross-examination, any limitations on the right at the suppression hearing must be justified by weighty considerations. Green, 670 F.2d at 1154.[29] I agree.
¶ 61. In interpreting the Sixth Amendment Confrontation Clause, the majority opinion errs in falling to consider the right to a fair trial and the significant role of cross-examination.
*259 ¶ 62. A federal court of appeals has written of the right of cross-examination as follows: "So basic is the right [to cross-examine witnesses] that the Supreme Court has held that its denial, 'without waiver. . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.1 " Proffitt v. Wainwright, 685 F.2d 1227, 1251 (11th Cir. 1982) (quoting Smith v. Illinois, 390 U.S. 129, 131 (1968)).[30]
¶ 63. In sum, the United States Supreme Court has indicated that the Sixth Amendment text "in all criminal proceedings" includes a pretrial proceeding that lays the groundwork for a fair trial and enables the accused to cross-examine witnesses. Thus the Court's cases have kept the door open for an accused's Sixth Amendment confrontation right to apply at a suppression hearing. Looking to the critical stage analysis, I conclude that the confrontation right should apply at suppression hearings to permit cross-examination, which promotes a fair trial.
B
¶ 64. In its cases interpreting and applying enumerated Sixth Amendment rights, the Court has interpreted and applied the Sixth Amendment text "in all criminal prosecutions" by examining the purpose and function of the particular criminal proceeding. *260 Whether the Court applies a Sixth Amendment right in a pretrial proceeding requires comparing the purpose and function of the pretrial proceeding with the purpose and functions of the enumerated right and the trial.[31]
¶ 65. For example, the United States Supreme Court has declared that an accused's Sixth Amendment right to a public trial grants an accused the right to a public suppression hearing. In Waller v. Georgia, 467 U.S. 39 (1984), the Court described the function of the accused's Sixth Amendment public trial right as "ensuring that judge and prosecutor carry out their duties responsibly," "encourag[ing] witnesses to come forward," and "discourag[ing] perjury." Waller, 467 U.S. at 46.
¶ 66. The Waller Court reasoned that the accused's Sixth Amendment's right to a public trial extends to a pretrial suppression hearing because "[t]hese aims and interests [protected at trial] are no *261 less pressing in a hearing to suppress wrongfully seized evidence." Waller, 467 U.S. at 46.
¶ 67. Furthermore, the pretrial suppression hearing has in many instances supplanted the trial. The Waller Court recognized that for many defendants the suppression hearing is "the only trial, because the defendants [will] thereafter plead[] guilty . . . ." Waller, 467 U.S. at 47. The suppression hearing resembles a bench trial: witnesses are called; the defendant has a right to counsel who can question witnesses; the judge must find facts and apply legal principles to the facts found; the conduct of law enforcement officials is often reviewed at a suppression hearing. The Waller Court elaborated as follows:
[A] suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters. The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor.... [SJtrong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining the evidence.
Waller, 467 U.S. at 46-47 (internal quotation marks and citations omitted).
¶ 68. In effect, the Waller court recognized that suppression hearings are tantamount to trials, in both form and importance.
f 69. The purpose and function of an accused's Sixth Amendment right to a public trial echo the purpose and function of the exclusionary rule. The exclusion of evidence at trial is an accused's objective in a suppression hearing. The Wisconsin Supreme Court first adopted and applied the exclusionary rule *262 in Hoyer v. State, 180 Wis. 407, 193 N.W. 89 (1923). Since then, evidence has been excluded as a check on law enforcement. "Unlawful police conduct is deterred when evidence recovered in unreasonable searches is not admissible in courts."[32] State v. Tompkins, 144 Wis. 2d 116, 133-34, 423 N.W.2d 823 (1988); State v. Gums, 69 Wis. 2d 513, 516-17, 230 N.W.2d 813 (1975). See also Conrad v. State, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974) (explaining that judicial integrity could be compromised if unlawful police conduct were sanctioned by the use of evidence obtained in violation of the Fourth Amendment).
¶ 70. Both the Public Trial Clause and the exclusionary rule are aimed at deterring unlawful conduct. This deterrent effect would be weakened if the Sixth Amendment right to public trial did not apply to a suppression hearing or the right to confrontation were not recognized in suppression hearings. Without an accused's confrontation right, the state's evidence will not be examined adequately at the suppression hearing.
¶ 71. In determining whether the Sixth Amendment right to a public trial applies to render a suppression hearing public, Justice Blackmun compared the purpose and function of the suppression hearing to the purpose and function of a trial. Justice Blackmun reasoned that the pretrial suppression hearing "resembles and relates to the full trial in almost every particular," and therefore the Sixth Amendment right to a public trial requires a public suppression hearing. "[T]he pretrial suppression hearing. . . must be con *263 sidered part of the trial." Gannett, 443 U.S. at 434, 436-37 (Blackmun, J., concurring in part and dissenting in part). The following characteristics of a suppression hearing led the Justice to this conclusion:
• "Evidence is presented by means of live testimony, witnesses are sworn, and those witnesses are subject to cross-examination."
• "Determination of the ultimate issue depends in most cases upon the trier of fact's evaluation of the evidence, and credibility is often crucial."
• "[T]he pretrial suppression hearing often is critical, and it may be decisive, in the prosecution of a criminal case. If the defendant prevails, he will have dealt the prosecution's case a serious, perhaps fatal, blow; the proceeding often then will be dismissed or negotiated on terms favorable to the defense. If the prosecution successfully resists the motion to suppress, the defendant may have little hope of success at trial (especially where a confession is in issue), with the result that the likelihood of a guilty plea is substantially increased."[33]
• "The suppression hearing often is the only judicial proceeding of substantial importance that takes place during a criminal prosecution."
Gannett, 443 U.S. 434-36 (Blackmun, J., concurring in part and dissenting in part).
*264 f 72. For Justice Blackmun, these factors led him to conclude that the suppression hearing—so much like a trial—must, like a trial, be public under the Sixth Amendment.
¶ 73. These factors lead me to conclude that the suppression hearing—so much like a trial—must, like a trial, afford an accused the confrontation right.[34]
f 74. The most striking aspect of the suppression hearing that leads me to this conclusion is that the suppression hearing is the turning point in many criminal prosecutions.[35] The majority opinion concedes *265 (as it must) that "suppression hearings have become an important stage in many criminal cases since the Supreme Court adopted the exclusionary rule . . . Majority op., ¶ 17. Yet the majority opinion strangely suggests that guilt or innocence is not at stake in the suppression hearing. The majority opinion asserts that its conclusion that the confrontation right does not apply at suppression hearings is compelled because the "confrontation right protects defendants at trial— when guilt or innocence is at stake." Majority op., ¶ 24; see also majority op., ¶ 29.
¶ 75. But guilt or innocence is often at stake at suppression hearings. In drug offenses and drunk-driving prosecutions, for instance, the result of the suppression hearing is often determinative of the case.[36] Often, when a defendant's motion to suppress fails, the defendant pleads guilty. "Something in the *266 neighborhood of 85 percent of all criminal charges are resolved by guilty pleas, frequently after ... motions to suppress evidence have been ruled upon." Gannett Co., 443 U.S. at 397 (1979) (Burger, C.J., concurring).[37] The United States Supreme Court has recognized that because our criminal justice system has become " 'for the most part a system of pleas, not a system of trials,' it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." Missouri v. Frye, 566 U.S. 133, 143-44 (2012) (internal citations and quotation marks omitted).[38]
¶ 76. Because the suppression hearing is frequently outcome-determinative, involves adversarial and trial-like practices, and requires the circuit court to weigh testimony as a fact-finder and apply the law to the facts, the Sixth Amendment compels the conclusion that an accused's Sixth Amendment confrontation right applies.
The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,1 it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process (internal citations omitted).
*267 ¶ 77. I conclude on the basis of the text of the Sixth Amendment, the history of the suppression hearing as a trial proceeding, the purpose and function of the suppression hearing, and the United States Supreme Court's interpretation and application of the enumerated Sixth Amendment rights to non-trial proceedings, that Zamzow has a Sixth Amendment right to confront witnesses at the suppression hearing.
¶ 78. The majority opinion nullifies the accused's Sixth Amendment's confrontation right at suppression hearings by adopting an absolute, no-exeeptions-allowed holding.
* * * *
¶ 79. To conclude briefly, the Sixth Amendment right to confrontation applies at suppression hearings.
¶ 80. Suppression hearings are historically and functionally a part of the trial. Indeed, a suppression hearing often supplants the trial. The suppression hearing is a critical stage of the "criminal prosecution"; a defendant's right to a fair trial is dependent on counsel's ability to cross-examine adverse witnesses. The deterrence effect of the exclusionary rule will not be realized if the right to confrontation does not exist at the suppression hearing.
¶ 81. Because the suppression hearing involves adversarial and trial-like practices, is frequently outcome-determinative, and requires the circuit court to weigh testimony as fact-finder and apply the law to the facts, the Sixth Amendment, in my opinion, compels a court to recognize that defendants have a right to confrontation at a suppression hearing. By refusing to give Zamzow a confrontation right at the suppression hearing in the instant case, the majority opinion *268 nullifies the Sixth Amendment's guarantee that the "accused" shall have the right to confrontation "in all criminal prosecutions."[39]
¶ 82. Finally, the majority opinion seems to pose a serious problem for future suppression hearings. The State generally has the burden of proof at a suppression hearing that the evidence is admissible at the hearing. Rules of evidence apparently are not fully applicable at a suppression hearing. See Wis. Stat. §§ 901.04(1), 911.01(4)(a); State v. Jiles, 2003 WI 66, ¶¶ 25-30, 262 Wis. 2d 457, 663 N.W.2d 798.[40]
¶ 83. In the future, according to the majority opinion, the State may offer hearsay evidence in a suppression hearing. As a practical matter, the defendant may not ever be able to effectively cross-examine the witness. Isn't the result of the suppression hearing that the unsuppressed evidence may be introduced at trial? See ¶ 47, supra.
*269 ¶ 84. Court of Appeals Judge Paul Reilly, dissenting from the court of appeals decision in the instant case, posed the problem as follows: A paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether evidence should be suppressed may become the norm. The possible effect of the court of appeals decision (and the majority opinion in the instant case), according to Judge Reilly, is that hearsay and double hearsay testimony may be used at a suppression hearing to support the constitutional reasonableness of a search and seizure and therefore the admissibility of contraband, for example, when the same hearsay would likely not be admitted at trial.
¶ 85. Judge Reilly wrote as follows:
The effect of the majority's decision is that evidentiary hearings are no longer necessary to the determination of whether a warrantless search and/or seizure was constitutional. Suppression hearings may be reduced to a paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether a warrantless search or seizure was nevertheless lawful. The majority mistakes us for a civil law country rather than recognizing our common law foundation.
[[Image here]]
The majority provides no guidance in how it expects courts to protect the Fourth Amendment rights of a criminal defendant such as Zamzow absent the Sixth Amendment's "crucible of cross-examination" in evaluating the government's accusations. By relying on Frambs, the majority disregards the Crawford Court's lament over the legacy of Roberts as one of "fail[ure] to provide meaningful protection from even core confrontation violations."... As I fear this case continues that unfortunate legacy, I dissent.
*270 State v. Zamzow, 2016 WI App 7, ¶¶ 22, 23, 366 Wis. 2d 562, 874 N.W.2d 328 (Reilly, J., dissenting).
¶ 86. For the reasons set forth, I dissent.
¶ 87. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.

 The defendant asserts that the stop of his vehicle was unlawful and therefore that all evidence derivative of the stop should be suppressed.

 Neither a constitutional nor a statutory right of confrontation exists in a preliminary examination in Wisconsin. Wis. Stat. § 970.038; State v. O'Brien, 2014 WI 54, ¶¶ 30-31, 354 Wis. 2d 753, 850 N.W.2d 8.
In a preliminary examination, the question is whether there is probable cause to hold the accused for trial. See majority op., ¶ 17.
The United States Supreme Court has held that a probable cause determination for the sole purpose of pretrial detention does not require the full panoply of adversarial safeguards, including confrontation. This type of pretrial proceeding does not impair the accused's defense on the merits. Gerstein v. Pugh, 420 U.S. 103, 119 (1975); United States v. Green, 670 F.2d 1148, 1154 n.8 (D.C. Cir. 1981).
In a suppression hearing, the question is what evidence will be admitted at trial to determine guilt. A suppression hearing is a more searching exploration into the merits of the case than a preliminary examination.

 "Testimonial statements of witnesses absent from trial" violate a defendant's confrontation right unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59 (2004). Whether statements of different types and contexts are testimonial has been progressively defined by the Court since Crawford: "[T]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establishing] or proving] past *245 events potentially relevant to later criminal prosecution." Bullcoming v. New Mexico, 564 U.S. 647, 659 n.6 (2011) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)).
Court of Appeals Judge Paul Reilly concluded that Officer Birkholz's statement that Zamzow crossed the center line prior to the stop was testimonial, as it described a past event with the purpose of establishing or proving that event in a later criminal prosecution and was made by an officer who intended to bear testimony in that prosecution. State v. Zamzow, 2016 WI App 7, ¶ 17, 366 Wis. 2d 562, 874 N.W.2d 328.

 In writing Crawford, a seminal Confrontation Clause case, Justice Scalia acknowledged that the Sixth Amendment's text alone does not resolve how to apply the Confrontation Clause. Crawford, 541 U.S. at 42-43.

 Coleman v. Alabama, 399 U.S. 1, 14 (1970) (Douglas, J., concurring).

 Mattox v. United States, 156 U.S. 237 (1895). The majority opinion, ¶ 15, cites Mattox for the proposition that the Constitution is interpreted in light of the law existing when it was adopted. In ¶ 16, the majority opinion quotes from Mattox to emphasize the trial-oriented protections of the confrontation right. The Mattox language quoted by the majority opinion states that the "primary object" of the Confrontation Clause is to prevent convictions based on depositions and ex parte affidavits. Applying the Confrontation Clause at a suppression hearing may result in the suppression of the use of depositions and ex parte affidavits at trial.
Justice Scalia explains Mattox's holding to be that prior trial or preliminary hearing testimony is admissible at trial only if the defendant had an adequate opportunity to cross-examine the witness before trial. Crawford, 541 U.S. at 57.

 For additional historical analyses of the Confrontation
Clause, see Benjamin C. McMurray, Challenging Untested *248 Facts at Sentencing: The Applicability of Crawford at Sentencing After Booker, 37 McGeorge L. Rev. 589, 605-08 (2006); Shaakirrah R. Sanders, Unbranding Confrontation as Only a Trial Right, 65 Hastings L.J. 1257, 1261-66 (2014).
Cf. California v. Green, 399 U.S. 149, 173-74 (1970) (Harlan, J., concurring) ("[T]he Confrontation Clause comes to us on faded parchment. History seems to give us very little insight into the intended scope of the Sixth Amendment Confrontation Clause.").

 Crawford, 541 U.S. at 43.

 Crawford, 541 U.S. at 49 (quoted source omitted).

 Crawford, 541 U.S. at 49-50 (citations omitted).

 Crawford, 541 U.S. at 54.

 Crawford, 541 U.S. at 55.

 Crawford, 541 U.S. at 61. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69.
"Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Crawford, 541 U.S. at 62.

 In McCray v. Illinois, 386 U.S. 300, 305 (1967), the Court tacitly assumed that the Confrontation Clause applies to a suppression hearing. In that case, the Court concluded that a defendant could not ask for the name of a confidential informant during cross-examination at a suppression hearing, citing the confidential informant privilege. McCray held that the Clause was not violated by limiting cross-examination; it did not hold that the Clause was inapplicable to a suppression hearing. The McCray Court distinguished between suppression hearings and trials (in which guilt is determined) in balancing the application of an informer privilege. McCray, 386 U.S. at 307.
Recognizing a Sixth Amendment confrontation right at a suppression hearing does not mean that the confrontation right at the suppression hearing has no limits. Indeed the limits on the right to confrontation at a suppression hearing and at trial are not necessarily the same. The majority opinion misses this point when it implies that Professor LaFave's writings are inconsistent on the question whether a right to confrontation exists at a suppression hearing. See majority op., ¶ 12 n.6.

 See, e.g., California v. Green, 399 U.S. 149, 157 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); Barber v. Page, 390 U.S. 719, 725-26 (1968) (the confrontation right encompasses "the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness").

 Indeed the Court has recently indicated that the "trial right" reading of the Confrontation Clause may be erroneous. See, e.g., Melendez-Diaz v. Massachusetts, 557 U.S. 305, 315 (2009) (in discussing a paradigmatic historical example of a violation of the Confrontation Clause, the Court noted that the rejection of ex parte affidavits at trial is "the core of the right to confrontation, not its limits.").
I conclude that although an accused's right of confrontation at a suppression hearing may not be the "core" of the Confrontation Clause, it is within its limits.

 See 6 Wayne R. LaFave et al., Search and Seizure § 11.2(f), at 110-22 (5th ed. 2012).

 See e.g., State v. Rivera, 192 P.3d 1213,1 14 (N.M. 2008) ("[T]he United States Supreme Court has held that a defendant's right to confront witnesses against him is primarily a trial right. . . ."); State v. Woinarowicz, 720 N.W.2d 635, 641 (N.D. 2006) ("The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings.").

 By contrast, see 6 Wayne R. LaFave et al., Search and Seizure § 11.2(d), at 92 (5th ed. 2012), concluding that the right of confrontation applies at a Fourth Amendment suppression hearing.

 See, e.g., 3 Wayne R. LaFave, Criminal Procedure § 10.1(a) (4th ed. 2016) ("At one time, it was not uncommon for states to treat objections to illegally obtained evidence as subject to the usual principle that the admissibility of evidence is determined when it is tendered and not in advance of trial. A few jurisdictions still follow [this approach] ....") (internal quotation marks omitted).
See, e.g., State v. Allen, 183 Wis. 323, 197 N.W. 808 (1924) (motion to suppress illegally obtained evidence brought during trial, when prosecution seeks to use the evidence).

 See also Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 395-96 (1979) (Burger, C.J., concurring) ("When the Sixth Amendment was written, and for more than a century after *253 that, no one could have conceived that the exclusionary rule and pretrial motions to suppress evidence would be part of our criminal jurisprudence.").
See also North Carolina v. Wrenn, 417 U.S. 973 (1974) (White, J., dissenting from denial of certiorari) ("Evidence used against [the defendant] at trial was seized under a search warrant issued by a magistrate on an affidavit which was sustained at trial after an evidentiary hearing out of the presence of a jury.").

 Jones v. United States, 362 U.S. 257, 264 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83 (1980):
In the interest of normal procedural orderliness, a motion to suppress, under Rule 41(e), must be made prior to trial, if the defendant then has knowledge of the grounds on which to base the motion.. .. This provision of Rule 41(e), requiring the motion to suppress to be made before trial, is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.

 See, e.g., Federal Rule of Criminal Procedure Rule 12(e); United States v. White, 584 F.3d 935, 948 (10th Cir. 2009):
Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that a party raise a motion to suppress before trial. A *254 party who fails to do so "waives any Rule 12(b)(3) defense, objection, or request," although "[flor good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e). This waiver rule applies not only when a defendant fails to file any pretrial motion to suppress, but also when a defendant fails to assert a particular argument in a pretrial suppression motion that he did file.
See also Wis. Stat. § 971.31(2) ("[O]bjections based on . . . the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. . ..")

 See Coleman v. Alabama, 399 U.S. 1, 7 (1970) (an accused "requires the guiding hand of counsel at every step in the proceedings against him") (quoting Powell v. Alabama, 287 U.S. 45, 69 (1932)); United States v. Wade, 388 U.S. 218, 336 (1967) ("It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial") (emphasis added).
Coleman involved a pretrial hearing to determine whether there was sufficient evidence against the accused to warrant proceeding with the criminal prosecution.

 The Sixth Amendment right to counsel applies at "critical stages" of the criminal prosecution when there is "potential substantial prejudice to [the] defendant's rights" that "confrontation and the ability of counsel [helps to] avoid...." Wade, 388 U.S. at 227.
See also State v. Curry, 147 P.3d 483, 485-86 (Utah Ct. App. 2006) (concluding that the suppression hearing is a critical stage where counsel must be present to cross-examine the prosecution's witness).

 "The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment. . . [including] his right to be confronted with the witnesses against him.. . ." United States v. Wade, 388 U.S. 218, 226-27 (1967).

 See, e.g., Curry v. State, 228 S.W.3d 292, 297 (Tex. Ct. App. 2007) (the Confrontation Clause applies at a suppression hearing because it is a "critical stage" of the criminal prosecution); State v. Sigerson, 282 So. 2d 649, 651 (Fla. App. 1973) ("The hearing on the motion to suppress, while not deciding the guilt or innocence of the appellee, is clearly a critical stage of the prosecution and the confrontation clause of the Sixth Amendment to the United States constitution guarantees an accused in a criminal case the right to confront the witnesses against him."); United States v. Hodge, 19 F.3d 51, 53 (D.C. Cir. 1994) (a suppression hearing is a critical stage of the prosecution and "any limitations on the right of cross-examination . .. must be justified by weighty considerations") (internal quotation marks and citations omitted). See also United States v. Clark, 475 F.2d 240, 246-47 (2d Cir. 1973) (the defendant has a right to be present at a pretrial suppression hearing "held to determine the constitutionality of a seizure of evidence from an accused"; defendant was "entitled to assist his counsel in cross-examining [the prosecution's] witnesses and in developing [ ] matters further at the suppression hearing.").
Professor LaFave in 6 Search & Seizure, § 11.2(d), at 93 n. 217, cites the following cases in support of a confrontation right at suppression hearings:
• United States v. Mejia, 69 F.3d 309 (9th Cir. 1995) (where suppression hearing aborted because of illness of judge and new hearing held before another judge, it error for that judge merely to read transcript of some prosecution witnesses' testimony at aborted hearing; continuance should have been granted "so that the government's two main witnesses would testify in person and be cross-examined in front of the judge who would be required to assess their credibility").
• People v. Levine, 585 N.W.2d 770 (Mich. App. 1998) (citing cases from other states in support of conclusion that "the protections of the Confrontation Clause extend to a pretrial *258 suppression hearing") (the Michigan Supreme Court vacated this decision on other grounds, and did not address the appellate court's decision that the Confrontation Clause applies at suppression hearings).

 See also People v. Strothers, 928 N.Y.S.2d 28 (N.Y. App. Div. 2011) (the suppression hearing is a critical stage and trial judge's decision to proceed without defendant's counsel, who was running late, was reversible error).

 A limitation on the right of confrontation at a suppression hearing is an informer's privilege. See United States v. Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981).

 See also Davis v. Alaska, 415 U.S. 308, 315 (1974) (holding that adequate cross-examination is required by the Sixth Amendment and stating that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); Douglas v. Alabama, 380 U.S. 415, 418 (1965) (stating that "[o]ur cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination . ...").

 See Shaakirrah R. Sanders, Unbranding Confrontation as Only a Trial Right, 65 Hastings L.J. 1257 (2014) (arguing that a defendant's right to confrontation at a non-trial proceeding is determined by analogizing the protection afforded by the Sixth Amendment at trial).
Although I do not further discuss these cases in the instant dissent, I note that other Sixth Amendment rights apply in criminal prosecutions beyond the trial. See, e.g., United States v. Bowe, 698 F.2d 560, 565 (2d Cir. 1983) (the Compulsory Process Clause applies at a suppression hearing, unless that witness invoked the Fifth Amendment); Mempa v. Riley, 389 U.S. 128, 136-37 (1967) (Counsel Clause applies at sentencing in Washington state probation revocation proceeding); Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (Jury Clause applies at sentencing fact-finding); Alleyne United States, 133 S. Ct. 2151 (2013) (Jury Clause applies at sentencing for fact-finding for a fact that increases the penalty).

 See also 1 Wayne R. LaFave et al., Search & Seizure § 1.1(f) (5th ed. 2012) ("[T]he deterrence of unreasonable searches and seizures is a major purpose of the exclusionary rule.").

 "[A] decision on the motion to suppress is often outcome determinative if it is adverse to the government. Thus, from the prosecution's viewpoint, if evidence is suppressed, at worst, the case will be dismissed; at best, valuable evidence will be lost and the defendant will be in an enhanced plea bargaining position." Elizabeth Phillips Marsh, Does Evidence Law Matter in Criminal Suppression Hearings?, 25 Loy. L.A. L. Rev. 987, 996 (1992).

 The Fifth Circuit Court of Appeals stated that "we safeguard the right to cross-examination at the suppression hearing because the aims and interests involved in a suppression hearing are just as pressing as those in the actual trial." United States v. Stewart, 93 F.3d 189, 192 n.1 (5th Cir. 1996).
Justice Blackmun offered a similar approach in Kentucky v. Stincer, 482 U.S. 730 (1987), and Pennsylvania v. Ritchie, 480 U.S. 39 (1987). Justice Blackmun was persuaded that "there are cases in which a state rule that precludes a defendant from access to information before trial may hinder that defendant's opportunity for effective cross-examination at trial, and thus that such a rule equally may violate the Confrontation Clause." Kentucky v. Stincer, 482 U.S. at 738 n.9.
Justice Blackmun raised the same point in his separate writing in Ritchie, in which he faulted the majority for limiting its confrontation analysis to whether cross-examination is available and not inquiring into the "effectiveness of cross-examination." Ritchie, 480 U.S. at 62; see also Ritchie, 480 U.S. at 71 (Brennan, J., dissenting) ("The creation of a significant impediment to the conduct of cross-examination thus undercuts the protections of the Confrontation Clause, even if that impediment is not erected at the trial itself.") (emphasis added).
In Ritchie, 480 U.S. at 54 n.10, Justice Powell, however, observed in his plurality opinion that the Court has not yet recognized a Confrontation Clause violation prior to trial.

 The significance of a decision in a suppression case is seen in Wis. Stat. § 808.03(3)(b), providing: "An order deny *265 ing a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment or order notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest to the information or criminal complaint."

 See, e.g., Vill. of Granville v. Graziano, 858 N.E.2d 879, 882 (Ohio Mun. 2006) (applying the confrontation clause at a suppression hearing because the distinction between trial and pretrial suppression hearings has become particularly blurred in drunk driving cases, in which defendants must raise issues of the admissibility of test results in a pretrial motion to suppress); Curry v. State, 228 S.W.3d 292, 297 (Tex. Ct. App. 2007) ("In drug possession cases like the one before us, the outcome of the suppression hearing often determines the outcome of the trial itself."); Olney v. United States, 433 F.2d 161, 163 (9th Cir. 1970) ("We think that a motion to suppress evidence can well be [a critical] stage of prosecution, particularly in narcotics cases, where the crucial issue may well be the admissibility of narcotics allegedly found in the possession of the defendant.").

 By all accounts, this statistic is up: "In fiscal year 2015 the vast majority of offenders (97.1%) pleaded guilty." United States Sentencing Commission, Overview of Federal Criminal Cases Fiscal Year 2015 4 (2016), http://www.ussc. gov/sites/default/files/pdf/research-and-publications/research-publications/2016/FY15_Overview_Federal_Criminal_Cases .pdf

 Missouri v. Frye, 566 U.S. 133, 143-44 (2012):

 Christine Holst, in The Confrontation Clause and Pretrial Hearings: A Due Process Solution, 2010 U. Ill. L. Rev. 1599, 1624, proposes that the best avenue to protect a defendant's right to confrontation is under the Due Process Clause, rather than the Confrontation Clause. She concludes that "[a] restriction on confrontation at a pretrial hearing would then be unconstitutional if it denied the defendant his or her right to fundamentally fair procedure in the criminal prosecution process."

 See also United States v. Matlock, 415 U.S. 164, 172—74 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence.") (discussing Brinegar v. United States, 338 U.S. 160 (1949); Fed. R. Evid. 104(a) & 1101(d)(1); and citing 5 J. Wigmore, Evidence § 1385 (3d ed. 1940); C. McCormick, Evidence § 53 n.91 (2d ed. 1972)); see also United States v. Raddatz, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.").